UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:25-CR-00061-GNS-1

UNITED STATES OF AMERICA PLAINTIFF

v.

DECARLO M. COX DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Affidavit of Request to Dismiss Superseding Indictment (DN 39), Defendant's Affidavit of Request for Extension of Time (DN 55), Defendant's Motion the Court Lacks Jurisdiction (DN 61), and Defendant's Affidavit of Request (DN 70).

**A. Affidavit of Request to Dismiss Superseding Indictment (DN 39)**

Defendant has filed an affidavit seeking dismissal of the Superseding Indictment, which the Court construes as a motion to dismiss. *See* Fed. R. Crim. P. 47(a)-(b). The Court previously denied Defendant's prior motion seeking dismissal of the indictment (DN 26), including his supplemental filings (DN 29, 36), in which he sought dismissal of the Superseding Indictment on the grounds that it constituted vindicative prosecution. (*See* Order 1, DN 44); *see also United States v. Reyes*, No. 3:22-CR-79-RGJ, 2025 WL 2553722, at *2 (W.D. Ky. Sep. 4, 2025) ("Even [when] . . . 'increased charges result[ed] from a breakdown of the plea bargaining process' those actions are 'not [to] be deemed vindictive.'" (third alteration in original) (quoting *United States v. LaDeau*, 734 F.3d 561, 569 (6th Cir. 2013))). The pending motion raises no new grounds that would support dismissal for vindictive prosecution. (*See* Def.'s Aff. Req. 1-3, DN 39). For the reasons stated in the prior denial, the motion to dismiss is denied. (*See* Order 2, DN 44).[1]

[1] Defendant's affidavit of request for extension of time (DN 55) is accordingly denied as moot.

### B. Motion the Court Lacks Subject Matter Jurisdiction (DN 61)

Defendant has filed a motion asserting that the Court lacks subject matter jurisdiction (DN 61), which the Court construes as a motion to dismiss. *See* Fed. R. Crim. P. 47(a)-(b). Defendant alleges four bases for this supposed lack of jurisdiction: (1) the United States does not have "standing" to prosecute; (2) the Court is acting in "arbitration" without his consent; (3) Congress lacks power to "punish" felonies except for counterfeits, piracies, and those committed on federal property or in federal territories; and (4) the Court is "incompetent" because of Fed. R. Crim. P. 58. (Def.'s Mot. 1-3, DN 61). Each of these arguments is without merit.

#### 1. *The United States' "Standing"*

Defendant argues that the United States lacks standing to bring this criminal prosecution, citing cases dealing with the standing requirements for private-party plaintiffs in civil actions. (*See* Def.'s Mot. 1, DN 61 (citing *Warth v. Seldin*, 422 U.S. 490 (1975); *Allen v. Wright*, 468 U.S. 737 (1984))). This argument is not well-taken:

> To suggest . . . that the United States attorney needs an injury-in-fact or a personal stake in the outcome of the prosecution in order to exercise this core executive duty . . . is a proposition without any legislative, executive, or judicial support in the two-hundred and eighteen plus years that have passed since the passage of the Judiciary Act of 1789. In fact, the uniform consensus is to the contrary.

*United States v. Ellis*, No. 2:06-CR-390, 2007 WL 2028908, at *3 (W.D. Pa. July 12, 2007) (citing Edward Hartnett, *The Standing of the United States: How Criminal Prosecutions Show that Standing Doctrine Is Looking for Answers in All the Wrong Places*, 97 Mich. L. Rev. 2239, 2251 (1999)); *see also, e.g.*, *United States v. Owens*, No. 5:13-123, 2014 WL 2600082, at *1 (E.D. Ky. June 10, 2014) ("To the extent that [the defendant] is arguing that the government has no standing to prosecute him because the government has not been injured by the acts alleged in the indictment,

'the Government doubtlessly suffers an "injury in fact" when a defendant violates its criminal laws.'" (quoting *United States v. Yarbrough*, 452 F. App'x 186, 189 (3d Cir. 2011))).

### 2. *"Arbitration" Without Consent*

Defendant next argues that he believes this Court was formed pursuant to Article IV, Section 3 of the U.S. Constitution—rather than Article III, Section 1—and that for this reason it is acting "in arbitration," and therefore bound by the Federal Arbitration Act, requiring his consent. (*See* Def.'s Mot. 1, DN 61). There is no legal basis for this argument.

First, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). The FAA has no apparent connection to this pending *criminal* prosecution, and Defendant cites no authority at all to support its application to this case. Second, there is no support for Defendant's claim that this Court was formed under Article IV, Section 3 of the U.S. Constitution—which authorizes Congress, *inter alia*, to admit new States and to make rules and regulations for federal properties and territories. (*See* Def.'s Mot. 1, DN 61). To the contrary, Congress established the district courts in the Judiciary Act of 1789, pursuant to Article III of the U.S. Constitution. *See* Act of Sep. 24, 1789, ch. 20, § 3, 1 Stat. 73, 73; U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."). Congress further assigned district courts subject matter jurisdiction under 18 U.S.C. § 3231 over "all offenses against the laws of the United States." 18 U.S.C. § 3231; *see Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999) ("Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts."). This includes the case at bar.

### 3. *Constitutional Power of Congress*

Defendant next challenges Congress's constitutional authority to "punish" his alleged activity. (*See* Def.'s Mot. 2, DN 61; Def.'s Reply Mot. 1-4, DN 68). He relies on Article I, Section 8 of the U.S. Constitution, as well as the Tenth Amendment, and cases that note the lack of a freewheeling federal "police power" for Congress to legislate outside of powers delegated to it in the Constitution. (*See* Def.'s Mot. 2, DN 61 (citing U.S. Const. amend. X); Def.'s Suppl. Mot. 1-2, DN 63 (citing *Cohens v. Virginia*, 19 U.S. 264, 428 (1821); *Bond v. United States*, 572 U.S. 844, 879 (2014) (Scalia, J., concurring); *United States v. Lopez*, 514 U.S. 549, 584-85 (1995) (Thomas, J., concurring))). His argument lacks merit as applied to his own case.

The United States in its opposition correctly identifies the existence of voluminous authority upholding the criminal penalties of the Controlled Substances Act ("CSA") as within Congress's power under the Commerce Clause. (*See* Pl.'s Resp. Def.'s Mot. 2, DN 67); *see also Gonzales v. Raich*, 545 U.S. 1, 22 (2005) (upholding constitutionality of application of the CSA's criminal provisions to purely local marijuana cultivation); *United States v. Tucker*, 90 F.3d 1135, 1140 (6th Cir. 1996) (collecting cases upholding constitutionality of the CSA's criminalization of intrastate activity); *Lopez*, 514 U.S. at 558 ("[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." (alteration in original) (citation omitted)).

Defendant attempts to sidestep this body of authority by focusing on the word "punish" as it appears in other clauses of Article I, Section 8, and by seeking to distinguish authority to "punish" from authority to "criminalize." (*See* Def.'s Reply Mot. 1, DN 68; Def.'s Mot. 2, DN 61); U.S. Const. art. I, § 8, cl. 6, 10. Defendant asserts that he "do[es] not challenge the constitutionality of the CSA . . . [,]" only "the United States utilizing the CSA as a means to enforce

its punishment of felonies and local criminal activity . . . ." (*See* Def.'s Reply Mot. 3, DN 68). He admits that Congress can "'criminalize' an act or substance by and thr[ough] enactment" such as the CSA, but argues that Congress lacks power to "punish" the same, because since Article I, Section 8, Clauses 6 and 10 of the U.S. Constitution respectively delegate specific power to "punish" counterfeiters and pirates, and since *expressio unius est exclusio alterius*, therefore Congress must not be able to "punish" Defendant's conduct. (*See* Def.'s Reply Mot. 1, DN 68; Def.'s Mot. 2, DN 61). Thus, although he claims not to challenge the constitutionality of the CSA, that is still what his argument attempts to do—i.e., to cast his criminal prosecution under the statute as beyond Congress's constitutional power to authorize.

This attempt is unavailing. The suggested distinction between Congressional power to "criminalize" and to "punish," in this context, is one without a difference:

> The Constitution . . . makes few explicit references to federal criminal law, but the Necessary and Proper Clause nonetheless authorizes Congress, in the implementation of other explicit powers, to *create federal crimes*, to *confine offenders to prison*, . . . [and] to ensure the public's safety through *systems of parole and supervised release* . . . .

*United States v. Kebodeaux*, 570 U.S. 387, 394-95 (2013) (emphasis added) (citing *United States v. Comstock*, 560 U.S. 126, 136-37 (2010)). Congress's authority in carrying out its delegated powers thus includes capacity not only to "create federal crimes," but also to "confine offenders to prison . . . ." *Id*. If the latter is not the power to "punish," then that term would seem to have little meaning. There is accordingly no merit in Defendant's argument that because he is neither counterfeiter nor pirate, Congress might be able to "criminalize" his conduct, but not "punish" it. Whatever distinction might exist between the two terms, Congress plainly has authority to do both when it carries out its delegated powers. As stated previously, the criminal provisions of the CSA have repeatedly been upheld as constitutional exercises of Congress's delegated power under the

Commerce Clause, even when applied to intrastate activity. *See, e.g.*, *Raich*, 545 U.S. at 22. Defendant's disguised attack on the constitutionality of the CSA is therefore unsuccessful.

**4. *"Incompetence of the Court"***

Defendant finally endeavors to interpret Fed. R. Crim. P. 58(a)(1)—which states in part that "[t]hese rules apply in petty offenses and other misdemeanor cases"—as meaning that the *entire body* of the Federal Rules of Criminal Procedure do not apply to felonies, with the result that felonies in general are outside the competence of the district court. (Def.'s Mot. 3, DN 61). This argument is likewise without merit. The plain meaning of Fed. R. Crim. P. 58(a)(1) is that the various provisions *of that rule* apply to misdemeanors and petty offenses; it does not affect the applicability of the other rules of criminal procedure to felonies. *See United States v. Hoilman*, No. 3:22-CR-91-KAC-DCP, 2022 WL 17640199, at *2 (E.D. Tenn. Dec. 12, 2022) (where defendant was charged with felonies, it was "[b]y definition . . . neither a 'petty offense' case nor an 'other misdemeanor' case. Therefore, this case falls outside of the plain meaning of Rule 58." (internal citation omitted) (citation omitted)); *United States v. Gioia*, 853 F. Supp. 21, 25 (D. Mass. 1994) ("[Rule 58 . . .] is totally inapplicable to felony cases. One only has to look at the title of Rule 58, i.e., Procedures for Misdemeanors and Other Petty Offenses, to realize this. . . . It is applicable only to those criminal cases in which no crime greater than a misdemeanor is charged. *See* Rule 58(a)(1), Fed. R. Crim. P. It has absolutely no bearing on indictments charging felonies, such as [the] instant case.")

**C. <u>Motion for Discovery — Selective Prosecution</u>**

Defendant adds for the first time, in a supplement to his jurisdictional motion, a claim that if the United States *does* have authority to prosecute his case—which, as outlined above, it does—then its decision to prosecute some such cases, but not all, would be unconstitutional selective

prosecution in violation of the Equal Protection Clause. (*See* Def.'s Suppl. Mot. 4-5, DN 63 (citing *United States v. Abboud*, 438 F.3d 554, 580 (6th Cir. 2006))). He supplements this claim again in a later submission, attaching an exhibit purporting to show a "crime[] similar to" the alleged conduct with which Defendant is charged, but which the federal prosecutor "cho[se] not to prosecute." (Def.'s Suppl. 1, DN 69).[2] He also submits an affidavit of request, "in support of [his] claim [of] selective prosecution[,]" seeking documents relating to methamphetamine prosecutions in Kentucky over the last ten years, both federal and state, pursuant to Fed. R. Crim. P. 16(a)(1)(F). (*See* Def.'s Aff. Req. 1, DN 70). The Court construes this last as a motion for discovery. *See* Fed. R. Crim. P. 47(a)-(b).[3]

---

[2] This submission is styled as a "Supplement to (DN 54)"—i.e., to Defendant's reply (DN 54) regarding the Affidavit of Request to Dismiss Superseding Indictment on the basis of *vindictive* prosecution (DN 39). The submission references both Defendant's earlier claim of vindictive prosecution, and his more recent claim of selective prosecution. The supplement and exhibit add no new grounds to support the claim of *vindictive* prosecution, which as outlined above, has once again been denied. The exhibit is treated here as it relates to the claim of *selective* prosecution.

[3] Defendant's initial argument is apparently *not* that he was specifically discriminated against on an impermissible basis—the core of a selective prosecution claim—but rather that the existence of overlapping state and federal criminal jurisdiction makes *all* federal prosecutions selective prosecutions. He claims:

> If it were so[, that] the United States District Courts ha[ve] general jurisdiction over all crime within the Union States, there would be no need for the several state[s] to have established [their] own criminal courts . . . causing the crimes the United States chooses to prosecute [to] be[] *selective prosecution*, in violation of the Equal Protection Clause.

(Def.'s Suppl. Mot. 4-5, DN 63 (emphasis added)). To the extent that Defendant is using a "selective prosecution" claim to continue his jurisdictional argument—which, as discussed above, is without merit—by maintaining that every federal criminal prosecution of intrastate activity is *per se* a selective prosecution in violation of the Equal Protection Clause, that argument is without merit and is denied. On the other hand, to the extent that Defendant has made a request for *discovery* on his selective prosecution claim, and has attached an exhibit in support, his request is reviewed herein under the relevant standard for granting discovery on such a claim.

As the Sixth Circuit has explained:

> A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. Among those forbidden reasons are a defendant's race, religion, or the desire to prevent the exercise of [the defendant's] constitutional rights.

*United States v. Edwards*, 783 F. App'x 540, 546 (6th Cir. 2019) (alteration in original) (internal citation omitted) (citation omitted); *see also United States v. Hazel*, 696 F.2d 473, 474 (6th Cir. 1983) (a defendant makes a prima facie showing of selective prosecution by presenting sufficient evidence: "(1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, *and* (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights." (citation omitted)).

Because this claim is not a defense to the merits of a criminal charge, "discovery is not available pursuant to Fed. R. Crim. P. 16." *United States v. Thorpe*, 471 F.3d 652, 657 (6th Cir. 2006) (citation omitted). "A defendant hoping to obtain discovery must therefore make a showing of '*some evidence* tending to show the existence of the essential elements of the defense, [1] discriminatory effect and [2] discriminatory intent.'" *Id.* (citation omitted). There is otherwise generally a """strong presumption" that [prosecutors] [] have properly discharged their duties' in determining which cases to prosecute." *United States v. Ramic*, No. 1:21-CR-00013-GNS-HBB, 2023 WL 8482899, at *4 (W.D. Ky. Dec. 5, 2023) (alterations in original) (quoting *United States v. Baker*, 197 F.3d 211, 216 (6th Cir. 1999)); *see also United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023) ("[P]rosecutors have and need broad discretion to file charges where there is probable cause that someone has broken the law . . . ." (quoting *United States v. Andrews*, 633

F.2d 449, 453 (6th Cir. 1980))). Defendant has not met the "rigorous 'some evidence' standard" for either discriminatory effect or discriminatory intent. *Thorpe*, 471 F.3d at 655.

### 1. *Discriminatory Effect*

As the Sixth Circuit has noted, *every* defendant, "by virtue of [their] prosecution, . . . was *selected* for it." *United States v. Edwards*, 783 F. App'x 540, 546 (6th Cir. 2019). A prohibited "selective prosecution," on the other hand, occurs:

> when impermissible considerations motivate the prosecution of an individual but otherwise "similarly situated individuals" who could have been charged "were not similarly prosecuted." Specifically, those impermissible considerations must be *unrelated* to the criminal acts for which the person was prosecuted. A valid selective-prosecution claim might arise, for example, if a group of individuals conspired to rob a bank but only the racial minority among them was prosecuted; or if a number of protestors were trespassing on private property but the only protestor who was prosecuted was known to be a vocal critic of the local police department.

*Id*. (internal citation omitted). Further, as a sister court has explained:

> As to discriminatory effect, a "similarly situated" person for selective prosecution purposes is "one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant."

*United States v. Henderson*, 485 F. Supp. 2d 831, 862 (S.D. Ohio 2007) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)). Thus, "an individual is similarly situated only if '[t]he circumstances present *no legitimate prosecutorial factors* that might justify making different prosecutorial decisions with respect to them.'" *Id.* (alteration in original) (emphasis added) (quoting *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996)).

Defendant's exhibit, apparently a printout of a state criminal docket sheet, purports to show that some other individual pleaded guilty in Kentucky state court to marijuana and gun charges in

early 2026, while methamphetamine and persistent felony offender charges were dismissed.[4] (Def.'s Ex. D, at 1-2, DN 69-1). Defendant asserts that this is a crime "similar to" the alleged criminal conduct in his own case, and that the federal prosecutor had "knowledge of" this other case and "cho[se] not to prosecute" it. (Def.'s Suppl. 1, DN 69). Even if the Court were to accept as true Defendant's bare assertion that the federal prosecutor knew about this other case and did not prosecute it, the record does not show—and Defendant does not identify—how these cases are sufficiently similarly situated that they present "no legitimate prosecutorial factors" to "justify making different prosecutorial decisions . . . ." *Henderson*, 485 F. Supp. 2d at 862 (citation omitted).

Defendant is charged in the Superseding Indictment with two counts of Distribution of Methamphetamine, one count of Possession with Intent to Distribute Cocaine Base and Cocaine, and one count of Possession of a Firearm in Furtherance of Drug Trafficking. (Superseding Indictment 1-2, DN 31). The two methamphetamine counts each charge Defendant with distribution of *fifty (50) or more grams* of methamphetamine, each on a different occasion. (Superseding Indictment 1-2). His exhibit shows that the other individual was charged in state court with, *inter alia*, a single count of trafficking in *two (2) or more grams* of methamphetamine, with that charge later being dismissed by the prosecutor. (Def.'s Ex. D, at 1, DN 69-1). Thus, even on the methamphetamine charges alone, the record does not provide evidence that the underlying conduct was sufficiently similar that there were no legitimate factors for differential

[4] Specifically, the exhibit indicates that the individual pleaded guilty in Allen Circuit Court (Kentucky) on Jan. 20, 2026, to one count of Convicted Felon in Possession of a Firearm, KRS 527.040, and one count of Possession of Marijuana, KRS 218A.1422, while two other charges, Trafficking in Controlled Substance, 1st Degree, 1st Offense (>= 2 Gms Methamphetamine), KRS 218A.1412, and Persistent Felony Offender – 2nd Degree, KRS 532.080(2), were dismissed by motion of the prosecutor. (Def.'s Ex. D, at 1-2, DN 69-1).

decision-making. Defendant is charged with possession of greater quantities of methamphetamine, on more occasions. Additionally, seeing as the state methamphetamine charge against the other individual was dismissed, the record certainly does not provide any evidence that the exhibit represents someone "against whom the evidence was as strong or stronger than" that against Defendant. *See Henderson*, 485 F. Supp. 2d at 862 (citation omitted).[5]

Because Defendant has not satisfied the "rigorous 'some evidence' standard" for discriminatory effect, discovery may not be granted. *See Thorpe*, 471 F.3d at 659 (finding district court abused its discretion by granting discovery on selective prosecution claim where "some evidence" standard was not met as to "similarly situated" individuals, meaning persons "known to federal law enforcement officers who ha[d] been arrested for" the specific type of conduct in the statutory provision under which defendant was charged).

**2. *Discriminatory Intent***

Even if Defendant had shown that there was a sufficiently similarly situated individual who was not prosecuted, "he would also have to show discriminatory intent by prosecutors." *Ramic*, 2023 WL 8482899, at *6. That is, he would need to provide some evidence "that the decisionmakers in *his* case acted with discriminatory purpose." *United States v. Lawrence*, 735 F.3d 385, 439 (6th Cir. 2013) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)); *see also Thorpe*, 471 F.3d at 660 ("[G]eneral statistics, without more, are insufficient to show

[5] This is of course not to say that the exhibit rules out the possibility of similar underlying facts—only that it provides no evidence of such similarity. For example, a state charge of Trafficking First Degree involving "two or more" grams of methamphetamine is not *logically* inconsistent with underlying conduct involving fifty or more grams. Similarly, a charge could be dismissed for many reasons, such as in a plea agreement, even where the evidence the prosecution had on that charge was strong. Defendant's exhibit, however, and therefore the record in this case, does not rise to the necessary showing of "some evidence" of a similarly situated person who was not similarly prosecuted.

discriminatory intent." (citing *McCleskey*, 481 U.S. at 292)). He has not done so, and accordingly fails to satisfy this prong as well.

While Defendant seeks to make his request for materials pursuant to Fed. R. Crim. P. 16, as noted previously, for "a selective prosecution claim . . . discovery is not available pursuant to Fed. R. Crim. P. 16." *Thorpe*, 471 F.3d at 657 (citation omitted). Because he has also failed to meet the "rigorous 'some evidence' standard" required to obtain discovery on a selective prosecution claim, the motion for discovery is denied. *Id.*

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows**:**

1. Defendant's Affidavit of Request to Dismiss Superseding Indictment (DN 39) is **DENIED**.

2. Defendant's Affidavit of Request for Extension of Time (DN 55) is **DENIED AS MOOT**.

3. Defendant's Motion the Court Lacks Jurisdiction (DN 61) is **DENIED.**

4. Defendant's Affidavit of Request (DN 70) is **DENIED**.

**Greg N. Stivers, Judge**
**United States District Court**
September 17, 2026

cc: counsel of record
Defendant, *pro se*